Jason D. Smith (NV Bar No. 9691)
Nicholas J. Santoro (NV Bar No. 532)
HOLLEY DRIGGS LTD
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
jsmith@nevadafirm.com
nsantoro@nevadafirm.com

Megan L. Rodgers*
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Tel.: (650) 632-4700
mrodgers@cov.com

Teena-Ann V. Sankoorikal*
Micaela R.H. McMurrough*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel: (212) 841-1000
tsankoorikal@cov.com
mmcmurrough@cov.com

Isaac D. Chaput*
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
ichaput@cov.com

*Pro Hac Vice application forthcoming

Attorneys for Defendant Aristocrat Technologies, Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| MARY HOSKINS, individually and on behalf of all similarly situated individuals,<br><br>　　Plaintiff,<br><br>　　v.<br><br>ARISTOCRAT TECHNOLOGIES, INC.,<br><br>　　Defendant | Civil Case No.: _____<br><br>Removed from: Eighth Judicial District Court, Clark County, Nevada<br><br>**DEFENDANT ARISTOCRAT TECHNOLOGIES, INC.'S NOTICE OF REMOVAL** |

**NOTICE OF REMOVAL**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453, Defendant Aristocrat Technologies, Inc. ("Aristocrat") has removed the above-captioned action from the Eighth Judicial District Court of the State of Nevada for Clark County to the United States District Court for the District of Nevada. As grounds for removal, Aristocrat states:

## I. SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

1. Plaintiff Mary Hoskins filed this class action in the Eighth Judicial District Court of the State of Nevada for Clark County on October 5, 2023. The court designated the case A-23-879061-C.

2. Plaintiff alleges that Aristocrat "knew or should have known of a critical security vulnerability impacting the MOVEit Secure File Transfer server it used," "failed to investigate the vulnerability and any potential attack into their system," and "failed to inform Plaintiff and the Class Members that their PII [personally identifiable information] was at significant risk of being stolen." Compl. ¶ 3. Plaintiff asserts causes of action for negligence, breach of implied contract, breach of fiduciary duty, invasion of privacy, breach of the covenant of good faith and fair dealing, unjust enrichment, and injunctive and declaratory relief. *Id.* ¶¶ 122-201. Plaintiff asserts these causes of action on behalf of "[a]ll individuals whose PII may have been accessed and/or acquired in the Data Breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and the Class Members on or around September of 2023." *Id.* ¶ 110.

3. Plaintiff seeks remedies on behalf of the putative class for "compensatory damages" (Compl. at Prayer for Relief); "reimbursement of out-of-pocket costs" (*id.* ¶ 12); "punitive damages" (*id.* at Prayer for Relief); "consequential damages" (*id.* ¶¶ 140, 151); "nominal damages" (*id.* ¶ 151); "restitution" (*id.* ¶ 184); "disgorge[ment]" (*id.* ¶ 194); "attorneys' fees, costs and expenses" (*id.* at Prayer for Relief); and "declaratory and injunctive relief" (*id.* ¶ 184). Plaintiff also seeks at least ten different forms of injunctive relief ordering Aristocrat to, among other things, "ensure third-parties possessing its employees' PII engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing…[and for Aristocrat to] promptly correct any problems or issues detected by such third-party security auditors"; "significantly increase its spending on cybersecurity including systems and personnel"; and "engage third-party security auditors and internal personnel to run automated security monitoring." *Id.* ¶ 201.

## II. REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

4. This Court has original jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332. CAFA extends federal diversity jurisdiction to class actions where there are at least 100 members of the proposed plaintiff class, any member of the class of plaintiffs is a citizen

of a state different from any defendant, and the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(1)(B), (d)(2), (d)(5)(B), (d)(6). Each of these requirements is met here.

A.     **This Case is a Class Action.**

5.  CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Congress has instructed that "the definition of 'class action' is to be interpreted liberally[,]" such that "lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." S. Rep. No. 109-14, at 35 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 34; *see also Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

6.  Plaintiff seeks to bring this case as a class action under Nevada Rule of Civil Procedure 23—Nevada's analog to Rule 23 of the Federal Rules of Civil Procedure—which authorizes a representative party to bring suit on behalf of a class. *Compare* Nev. R. Civ. P. 23 *with* Fed. R. Civ. P. 23; *see* Compl. ¶ 109.

7.  Plaintiff purports to bring this action "on behalf of herself and on behalf of others similarly situated . . . whose PII may have been accessed and/or acquired in the Data Breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and the Class Members on or around September of 2023." Compl. ¶ 110.

8.  Accordingly, this case is a class action removable under Section 1332(d)(1)(B).

B.     **There Are at Least 100 Members of the Proposed Class.**

9.  CAFA confers jurisdiction over class actions with at least 100 proposed class members. 28 U.S.C. § 1332(d)(5)(B).

10. Plaintiff asserts that she intends to bring a class action on behalf of a purported class of "[a]ll individuals whose PII may have been accessed and/or acquired in the Data Breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and the Class Members on or around September of 2023." Compl. ¶ 110.

11. Plaintiff estimates that the putative class includes 7,200 members. *Id.* ¶ 111.

12. Therefore, based on the face of the Complaint, the number of proposed class members exceeds CAFA's 100-member requirement.

**C.     Minimal Diversity Exists Between the Parties.**

13.  Under CAFA, class actions need only have minimal diversity between the parties as opposed to complete diversity. 28 U.S.C. § 1332(d)(2)(A). A case satisfies CAFA's requirement of minimal diversity as long as any class member's citizenship differs from that of at least one defendant. *Id.*

14.  Here, Aristocrat is incorporated in Nevada and has its headquarters in Las Vegas, Nevada. Therefore, Aristocrat is a citizen of Nevada. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1882 (2010).

15.  Plaintiff presents a "nationwide class action" (Compl. ¶ 109), seeking to represent a nationwide putative class of "[a]ll individuals whose PII may have been accessed and/or acquired in the Data Breach." *Id.* ¶ 110.

16.  On the face of the Complaint, there is minimal diversity. *See Id.* ¶ 111. Specifically, the Complaint cites the Attorney General for the State of Maine Data Breach Notifications as identifying at least one Maine resident affected by the alleged data breach.[1] *Id.* Plaintiff's Complaint, therefore, supports a finding that there is at least one member of the proposed class who is a resident of Maine.

17.  Accordingly, because there is diversity of citizenship between at least one class member and at least one defendant, CAFA's minimal diversity requirement is satisfied.

**D.     The Aggregate Amount in Controversy Exceeds $5,000,000.**

18. For a case to be removable under CAFA, the amount in controversy must exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (d)(6). The amount in controversy is calculated by aggregating the claims of the individual class members. 28 U.S.C. § 1332(d)(6).

19. The amount in controversy is the "amount at stake in the underlying litigation" which includes "any result of the litigation" that results in payment owed by the defendant. *Gonzales v. CarMax*

---

[1] *See* Office of Maine Att'y Gen., Data Breach Notifications, https://apps.web.maine.gov/online/aeviewer/ME/40/7b3aedec-9b05-4547-9aae-730fe8ae06f4.shtml.

*Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citations omitted). "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). "[T]he Court properly considers the amount Plaintiffs put in controversy through the allegations in their Complaint, not what Defendants might ultimately pay in resolving the lawsuit." *Copple v. Arthur J. Gallegher & Co.*, No. 22-cv-0116, 2022 WL 3357865, at *7 (W.D. Wash. Aug. 2, 2022) *accord Bryant v. MX Holdings US, Inc.,* No. 222CV00855GMNEJY, 2022 WL 17852757, at *3 (D. Nev. Dec. 22, 2022).

20. When removal is sought under CAFA, the amount in controversy requirements should be "interpreted expansively." *Yeroushalmi v. Blockbuster, Inc.,* No. 05-225, 2005 WL 2083008, at *3 (C.D. Cal. July 11, 2005) citing S. Rep. No. 109-14, at 42 (2005). A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," not an evidentiary submission. *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 554; *accord Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). A removing defendant may further rely on a "chain of reasoning that includes assumptions." *Ibarra*, 775 F.3d at 1199. Those assumptions are reasonable when "founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). If the court is uncertain whether the amount in controversy exceeds $5,000,000, the "court should err in favor of exercising jurisdiction over the case." *Yeroushalmi*, 2005 WL 2083008, at *3 citing S. Rep. No. 109-14, at 42 (2005).

21. "Among other items, the amount in controversy [for purposes of removal under CAFA] includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018). If a plaintiff fails to plead a specific damage amount and the amount in controversy is not "facially apparent" from the Complaint, "the court may consider facts in the removal petition" to determine the amount at issue. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

22. Although Aristocrat asserts that the allegations in the Complaint are without merit and that neither Plaintiff, nor the putative Class Members have suffered any injury, the amount in controversy exceeds $5,000,000.[2]

23. Plaintiff seeks a range of monetary and injunctive remedies that far exceed $5,000,000. Plaintiff seeks "compensatory damages" (Compl. at Prayer for Relief); "reimbursement of out-of-pocket costs" (*id.* ¶ 12); "punitive damages" (*id.* at Prayer for Relief); "consequential damages" (*id.* ¶ 140, 151); "nominal damages" (*id.* ¶ 151); "restitution" (*id.* ¶ 184); "disgorge[ment]" (*id.* ¶ 194); "attorneys' fees, costs and expenses" (*id.* at Prayer for Relief); and "declaratory and injunctive relief" (*id*. ¶ 184) that includes ten separate injunctive requests (*id.* ¶ 201 (a-j)).

24. *First*, Aristocrat estimates that between **$5,171,040 and $7,763,040** may be in controversy for the cost of credit monitoring alone. Plaintiff seeks compensatory damages for the alleged injury of "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII" based on a "lifetime risk of identity theft." Compl. ¶ 14. Although Aristocrat offered 24-months of credit monitoring, Plaintiff alleges that "the offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come[.]" *Id.* ¶ 107.

25. According to the Complaint, the sensitive nature of the personally identifiable information at issue could give rise to a broad swath of "criminal activity" (Compl. ¶ 99) including "hacking" (*id.*); "unauthorized use of financial accounts" (*id.*); "fraudulent attempts to open unauthorized financial accounts (i.e. identity fraud)" (*id.*); reselling personal information on the "dark web" and further expanding data exposure to an online marketplace of cyber criminals (*id.* ¶ 90); and the creation of "Fullz packages" that allow cyber criminals to link PII to other personal data on the internet to sell it "over and over" (*id* ¶ 96). The Complaint alleges that the risk of fraudulent activity "may continue for years" (*id.* ¶ 102), and cannot be adequately remedied by 24-months of credit monitoring. *Id.* ¶ 107.

---

[2] The amount in controversy represents only what Plaintiff has requested at this stage in the proceedings. It is not an admission that Plaintiff is entitled to recover this amount. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability…To establish the jurisdictional amount, [the defendant] need not concede liability for the entire amount[.]" (citation omitted)).

26. The Complaint makes clear that Plaintiff seeks a lengthier and significantly higher level of credit protection against fraudulent activity. Plaintiff alleges that Class Members not only face "years of constant surveillance" (*id.* ¶ 104), and threats "for years to come" (*id.* ¶ 107), but confront a "lifetime risk of identity theft, sharing, and detrimental use of their sensitive information" (*id.* ¶ 14). The Complaint further alleges that, "[f]or the rest of their lives," Plaintiff and Class Members will deal with the "danger of identity thieves possessing and misusing their Personal Information" (*id.* ¶ 9), exacerbated by the "time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used[,]" (*id.* ¶ 102) for which the proffered 24-months of monitoring services is "inadequate" (*id.* ¶ 107). Based on these allegations, Aristocrat conservatively estimates that Plaintiff has placed the value of at least three additional years of credit monitoring in controversy. *See Porras v. Sprouts Farmers Mkt., LLC,* No. EDCV161005JGBKKX, 2016 WL 4051265, at *3 (C.D. Cal. July 25, 2016) (finding three additional years of credit monitoring to be a "conservative estimate" and "not unreasonable" even when the defendant offered credit monitoring).

27. Advertised rates by credit bureaus are appropriate for calculating the amount in controversy for credit monitoring. Courts rely on the advertised credit monitoring rates of the three major credit bureaus to evaluate the amount in controversy for CAFA jurisdiction in data breach cases. *See Morales v. Conifer Revenue Cycle Sols.*, LLC, No. 2:23-cv-01987-AB-AGR, 2023 WL 5236729, at *3 (C.D. Cal. Aug. 15, 2023) (accepting the defendant's evidence of advertised rates for Equifax and TransUnion to determine credit monitoring costs for purposes of calculating the amount in controversy); *Porras*, 2016 WL 4051265, at *3 (accepting the defendant's evidence of advertised rates for Equifax, TransUnion, and Experian to determine credit monitoring costs for purposes of calculating amount in controversy); *Copple*, 2022 WL 3357865, at *15 (finding it reasonable that defendants looked to the advertised rates of Equifax, TransUnion, and Experian to estimate the amount in controversy for credit monitoring costs to evaluate CAFA jurisdiction).

28. The monthly advertised cost per plaintiff for credit monitoring is $19.95 per month for Equifax, $24.99 per month for Experian, and $29.95 per month for TransUnion. *See* Declaration of Megan

L. Rodgers ("Rodgers Decl.," attached as **Exhibit A**), ¶¶ 2-6 & **Exhibits B – F**.[3] Based on these monthly rates, the cost of 36-months of credit monitoring for a class of 7,200 would range from $5,171,040 to $7,763,040, which alone exceeds the amount in controversy requirement for CAFA. *Id.*

29. *Second,* Plaintiff seeks punitive damages, which places an additional **$5,171,040 to $7,763,040** in controversy under the court's conservative method of calculating punitive damages. *See* Compl. at Prayer for Relief (seeking punitive damages). It is well established that punitive damages are part of the amount in controversy in a civil action. *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020); *Fritsch*, 899 F.3d at 793. Although Aristocrat does not believe any multiplier of any purported actual damages would be appropriate in this case, for purposes of calculating the amount in controversy, a one-to-one multiplier would be conservative and appropriate. "District courts within the Ninth Circuit have described a 1:1 ratio of punitive damages to compensatory damages as 'conservative' for purposes of assessing the amount in controversy requirement." *Guillen v. Kindred Healthcare Operating, Inc.*, No. EDCV1702196JAKFEMX, 2018 WL 1183354, at *5 (C.D. Cal. Mar. 7, 2018). *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007) (affirming the District Court's decision to use a "conservatively estimated" 1:1 ratio to economic damages in order to calculate punitive damages); *Aguirre v. Capital One Bank U.S.A.*, Case No.: 8:23-cv-00128-FWS-JDE, 2023 WL 4046836 (C.D. Cal. June 15, 2023) (applying a 1:1 ratio to calculate punitive damages and satisfying the amount in controversy); *Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2015 WL 4931756, at *7 (N.D. Cal. Aug. 18, 2015) (applying a 1:1 ratio to calculate punitive damages).

30. Accordingly, even under this court's most conservative ratio, punitive damages could amount to between $5,171,040 to $7,763,040.

---

[3] Equifax advertises credit monitoring services ranging from $9.95 to $19.95. The $9.95 service is referred to as "Equifax Complete," while the $19.95 service is referred to as "Equifax Complete Premier." "Equifax Complete" provides a level of credit monitoring that is not comparable in coverage to the credit monitoring offered by TransUnion and Experian. For example, "Equifax Complete" covers up to $500,000 in identity theft insurance, while TransUnion, Experian, and "Equifax Complete Premier" provide up to $1 million in identity theft insurance. Given the more expansive protection sought by Plaintiff, Aristocrat understands that Class Members seek credit monitoring coverage comparable to that offered by TransUnion, Experian, and "Equifax Complete Premier." *See* Ex. A, Rogers Decl., ¶¶ 2-6 & Exs. B – F.

31. *Third*, up to **$2,585,520 to $3,881,520** in attorney's fees may be in controversy. On the face of the Complaint, Plaintiff requests "reasonable attorneys' fees." Compl. at Prayer for Relief. "When a statute or contract provides for the recovery of attorney's fees, prospective attorney's fees must be included in the assessment of the amount in controversy."[4] *Arias v. Residence Inn*, 936 F.3d 920, 927 (9th Cir. 2019); *Fritsch*, 899 F.3d at 794. The Ninth Circuit "has established 25% of the common fund as a benchmark award to attorney fees." *Copple*, 2022 WL 3357865, at *5 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Castillo v. Bank of Am., NA*, 980 F.3d 723 (9th Cir. 2020)); *see also Lopez v. First Student, Inc.*, 427 F. Supp. 3d 1230, 1238 (C.D. Cal. 2019) (same). The "common fund," or aggregate damages in controversy, may include punitive damages. *See Greene*, 965 F.3d at 774 n.4 (inclusion of attorney fees estimated at 25 percent of compensatory and punitive damages was "reasonable" for purposes of establishing CAFA jurisdiction). Given that the combined value of alleged compensatory and punitive damages could range from $10,342,080 to $15,526,080, a 25% attorney fee award adds an additional $2,585,520 to $3,881,520 to the amount in controversy.

32. *Finally*, Plaintiff seeks at least ten different forms of injunctive relief. When measuring the value of injunctive relief for CAFA's amount in controversy requirement, the Ninth Circuit has confirmed that courts may consider "the costs of complying with an injunction." *Fritsch*, 899 F.3d at 793. In this case, Plaintiff requests injunctive relief that includes: (i) "[o]rdering Defendant to ensure third-parties possessing its employees' PII engage third-party security auditors/penetration testers, as well as internal security personnel to conduct testing…[and] ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors"; (ii) "[o]rdering Defendant to significantly increase its spending on cybersecurity including systems and personnel"; (iii) "[o]rdering Defendant to engage third-party security auditors and internal personnel to run automated security

---

[4] Plaintiff has not identified in the Complaint any contract, statute, or rule allowing for recovery of attorney's fees, and Nevada law provides a general bar to recovery of attorney's fees. *See Pardee Homes of Nevada v. Wolfram*, 135 Nev. 173, 177 (2019). Nevertheless, because Plaintiff is seeking attorney's fees on the face of the Complaint, *see* Compl. Prayer for Relief ¶ e, attorney's fees have been "put in controversy" and so Aristocrat includes them here (but contests that they are, in fact, recoverable). *Copple*, 2022 WL 3357865, at *7.

monitoring"; (iv) "[o]rdering that Defendant guarantee third-parties possessing its employees' PII audit, test, and train their security personnel regarding any new or modified procedures"; (v) "[o]rdering that Defendant protect Plaintiff's and the Class's PII by, among other things, guaranteeing third-parties possessing its employees' PII have firewalls and access controls"; (vi) "[o]rdering that Defendant cease storing unencrypted PII on its systems"; (vii) "[o]rdering that Defendant ensure that third-parties possessing its employees' PII conduct regular database scanning and securing checks"; (viii) "[o]rdering Defendant to ensure third-parties possessing its employees' PII routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach"; (ix) "[o]rdering Defendant to implement and enforce adequate retention policies for PII, including destroying, in a reasonably secure manner, PII once it is no longer necessary for it to be retained"; and (x)"[o]rdering Defendant to meaningfully educate its current, former, and prospective employees and subcontractors about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves." Compl. ¶ 201.

33. The broad and far-reaching injunctive relief sought by Plaintiffs is "further evidence that [Plaintiff] has placed a sufficient amount in controversy to exceed the CAFA threshold." *Bayol v. Zipcar, Inc.*, 2015 WL 4931756, at *10 (N.D. Cal. Aug. 18, 2015) (noting that "while it is not possible to estimate . . . the future cost of compliance with an as-yet-unknown injunction with any real certainty" it provides further support for the amount in controversy); *see also Morales*, 2023 WL 5236729, at *3 (noting that defendants presented evidence that "making changes to Defendant's data systems and complying with an injunction would cost in excess of $2 million").

34. Aristocrat does not concede that it is liable to Plaintiff or the putative class in any amount, or at all. Nevertheless, even the most conservative calculation of Plaintiff's requested relief shows that the amount in controversy far exceeds $5,000,000, exclusive of interests and costs. Indeed, the cost of credit monitoring alone exceeds $5,000,000. In total, the cost of credit monitoring ($5,171,040 to $7,763,040); punitive damages ($5,171,040 to $7,763,040); and attorney's fees ($2,585,520 to $3,881,520)—without considering other remedies requested, including but not limited to reimbursement of out-of-pocket expenses, nominal damages, consequential damages, restitution, disgorgement, and

broad injunctive relief—would put a minimum of $12.9 to $19.4 million in controversy. *See Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 13-CV-1238 JS WDW, 2014 WL 2945741, at *6 (E.D.N.Y. June 30, 2014) ("Given the size of the purported class (which is alleged to be in the thousands) and the expansive nature of Plaintiffs' claimed damages, it [is] hard to see how the amount-in-controversy does not exceed $5 million in actual damages and equitable relief . . .").

35. Thus, CAFA's amount in controversy requirement is satisfied. *See Dart*, 135 S. Ct. at 554.

### III.  COMPLIANCE WITH PROCEDURAL REQUIREMENTS

36. For the foregoing reasons, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), and this action is removable pursuant to 28 U.S.C. §§ 1441, 1453.

37. Aristocrat files this Notice of Removal under 28 U.S.C 28 U.S.C. §§ 1441(a) and 1453 in the United States District Court for the District of Nevada because the Eighth Judicial District Court of the State of Nevada for Clark County is within this district.

38. Aristocrat satisfied the procedural requirements for removal under 28 U.S.C. § 1446. This Notice is signed pursuant to Fed. R. Civ. P. 11.

39. Aristocrat was served with the Complaint on October 19, 2023. In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service of Plaintiff's Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

40. A copy of the state court docket sheet is attached as **Exhibit G**. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on Aristocrat in the state court action are attached as **Exhibits H through O**.

41. Under CAFA, "[a] class action may be removed . . . by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b). Aristocrat is the only named defendant in this action. Accordingly, Aristocrat need not obtain the consent of any other party to remove this action.

42. By filing this Notice of Removal, Aristocrat does not waive any right, objection, or defense that may be available to it, and expressly reserves all such rights, objections, and defenses, including but not limited to those related to personal jurisdiction and service of process.

43. If any question arises as to the propriety of removal to this Court, Aristocrat requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

44. Pursuant to 28 U.S.C. § 1446(d), Aristocrat will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

45. Aristocrat reserves the right to amend or further supplement this Notice.

46. WHEREFORE, Aristocrat removes this action from the Eighth Judicial District Court of the State of Nevada for Clark County to the United States District Court for the District of Nevada.

DATED:   November 17, 2023            By:   */s/ Jason D. Smith*
                                            Jason D. Smith, NV Bar No. 9691
                                            Nicholas J. Santoro, NV Bar No. 532
                                            HOLLEY DRIGGS LTD
                                            300 South 4th Street, Suite 1600
                                            Las Vegas, Nevada 89101
                                            Tel.: (702) 791-0308
                                            jsmith@nevadafirm.com
                                            nsantoro@nevadafirm.com

                                            Megan L. Rodgers*
                                            COVINGTON & BURLING LLP
                                            3000 El Camino Real
                                            5 Palo Alto Square, 10th Floor
                                            Palo Alto, CA 94306-2112
                                            Tel.: (650) 632-4700
                                            mrodgers@cov.com

                                            Teena-Ann V. Sankoorikal*
                                            Micaela R.H. McMurrough*
                                            COVINGTON & BURLING LLP
                                            The New York Times Building
                                            620 Eighth Avenue
                                            New York, NY 10018-1405
                                            Tel.: (212) 841-1000
                                            tsankoorikal@cov.com
                                            mmcmurrough@cov.com

                                            Isaac D. Chaput*
                                            COVINGTON & BURLING LLP

DEFENDANT ARISTOCRAT TECHNOLOGIES, INC.'S NOTICE OF REMOVAL

Salesforce Tower
415 Mission St Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
ichaput@cov.com

*Pro hac vice application forthcoming*

*Attorneys for Defendant Aristocrat Technologies, Inc.*